CHAIM LEZELL, an Infant, by His Father and Natural Guardian, SCHMUEL LEZELL, et al., Claimants, v STATE OF NEW YORK et al., Defendants.

Court of Claims, February 8, 1989

## APPEARANCES OF COUNSEL

*Schneider, Kleinick & Weitz, P. C. (Dennis R. Sawh* of counsel), for claimants. *Robert Abrams, Attorney-General (Katharine S. Brooks* of counsel), for defendants.

## OPINION OF THE COURT

GERARD M. WEISBERG, J.

In this medical malpractice action, claimants move for a

protective order striking defendants'[1] demand for authorizations for medical and school records for the infant claimant's nonparty mother and siblings.

The claim, brought by Schmuel Lezell, individually and as natural guardian of Chaim Lezell, alleges that the negligence of Downstate Medical Center, an instrumentality of the State University of New York for which the State is responsible, in the prenatal, obstetrical, neonatal and pediatric care provided to the infant claimant and his mother, Danielle Lezell, resulted in, among other things, Chaim's mental and developmental retardation, cerebral palsy and seizure disorder.

As amplified by the bill of particulars, the alleged malpractice stemmed from a "failure to diagnose, treat, manage and control feto-pelvic disproportion," a "failure to diagnose bony pelvis of mother," a "failure to diagnose inadequate pelvic outlet," a "failure to perform cesarean section when mother had a diagnosed small contracted and bony pelvis" and a "failure to perform a cesarean section in presence of known contracted pelvis"[2] in connection with the birth of Chaim and his twin sibling.[3]

Defendants deposed Danielle. At the examination, without objection, she testified that medication had been prescribed for her during her pregnancy with Chaim; to the names of the doctors and hospitals she consulted with in connection with that pregnancy; and that none of her seven other children were premature nor had any developmental problems, seizures or cerebral palsy. The State also learned that Danielle had provided a medical history to the Mishkon Home for its use in the treatment of Chaim. In it, in response to questions concerning the condition of the siblings, she responded that they were all normal.

Based thereon, the State demanded authorizations for the medical records for the prenatal and perinatal care of Dan-

---

1. Defendants were erroneously referred to as "Respondents" in the caption of the claim. The parties against whom an action is brought in the Court of Claims are properly designated as "Defendants." *(See, Bell v State of New York,* 140 Misc 2d 778.)

2. Claimants failed to file their bill of particulars in contravention of 22 NYCRR 206.5 (c) and defendants omitted it from the moving papers. In the absence of an objection or reply by the claimants, we assume that a bill was served and that the Assistant Attorney-General has quoted correctly from it.

3. The twin apparently suffered no injury and is not a claimant in this action.

ielle concerning the delivery of the six siblings who were born subsequent to Chaim, and the educational records for some of the children.

The claimants opposed the demand and moved for a protective order on the grounds that the material sought was privileged and irrelevant. In response, the defendants argued waiver resulting from bringing the action, references in the bill of particulars, Danielle's testimony at the examination before trial and her submitting the family medical history to the Mishkon Home. In addition, the State submitted the affidavit of a doctor specializing in obstetrics who opined that the medical records of the subsequent births are "extremely relevant" to the question of whether Danielle's pelvis was inadequate to deliver vaginally and whether a Cesarean section should have been performed.

In reply, the claimants offered only the argument of their counsel that since Chaim was the first born, and part of a twin delivery, the circumstances of his siblings' subsequent single births were irrelevant.

Claimants argue correctly that the medical records of Danielle and the siblings are matters which fall within the scope of the physician-patient privilege. (CPLR 4504.) Thus, absent a waiver, defendants cannot compel their production. *(Yetman v St. Charles Hosp.,* 112 AD2d 297.) The Second Department, where an appeal in this matter would be venued (Court of Claims Act § 24), has consistently held that where the infant claimant's mother is either a representative plaintiff or a nonparty, she has not placed her own medical history in issue. Accordingly, a waiver may not be based on the bringing of this action, other than with respect to the mother's medical records pertaining to the period when the infant plaintiff was *in utero* which are discoverable predicated upon the theory of impossibility of severance. *(See, Herbst v Bruhn,* 106 AD2d 546; *Scharlack v Richmond Mem. Hosp.,* 102 AD2d 886; *Hughson v St. Francis Hosp.,* 93 AD2d 491.) Moreover, inasmuch as the privilege is personal to the mother and siblings, unless they are real parties in interest, references in the bill of particulars to confidential material similarly fails to support a waiver. *(Sibley v Hayes 73 Corp.,* 126 AD2d 629.) Thus, for us to find a relinquishment of the privilege, it must be predicated on Danielle's testimony at the deposition or her submission of the medical history to the Mishkon Home.

Recently, in *Williams v Roosevelt Hosp.* (66 NY2d 391) the

Court of Appeals was called upon to define the scope of the physician-patient privilege at an examination before trial in a medical malpractice action. After noting that the privilege had been severely criticized because of serious doubt that its truth-inhibiting effect could be justified by any real promotion of public health, the court held that only confidential communications are properly protected and not the "mere facts and incidents of a person's medical history". *(Williams v Roosevelt Hosp., supra,* at 396.) Applying that rule to the case before it, that tribunal stated that a "witness may not refuse to answer questions regarding matters of fact, such as those posed in this case, as to whether her children had any physical or congenital problems, whether she was in the care of a physician or was taking medication during a certain period of time, or concerning the facts surrounding an abortion merely because those topics relate to events that required medical care or advice from a physician." *(Williams v Roosevelt Hosp., supra,* at 397.)

Applying the foregoing to the matter at bar, Danielle neither testified to nor otherwise revealed anything except the barest facts and incidents of her and the siblings' medical history. In fact, with respect to the siblings, her entire testimony was that they were all normal. This she was obligated to disclose because it was not privileged. Consequently, no waiver can be predicated on her compliance with the law. *(Pena v Kernisant,* NYLJ, Aug. 16, 1988, at 20, col 4 [Pizzuto, J.]; *see,* Kramer and Moore, *Some Miscellaneous Decisions Reviewed,* NYLJ, Feb. 7, 1989, at 3, col 1; *but cf., De Silva v Rosenberg,* 129 AD2d 609.) The actual medical records, however, as the repository of unwaived confidential communications remain privileged. *(Sibley v Hayes 73 Corp.,* 126 AD2d 629, *supra.)*

Early on, the Second Department recognized the inequity in not allowing a defendant to discover relevant information particularly where it was supposed that the plaintiff would waive the privilege at trial gaining the advantage of surprise. To remedy this situation, in *Hughson v St. Francis Hosp.* (93 AD2d 491, *supra)* the rule was set down that if the mother or siblings invoked the privilege during discovery, the infant plaintiff would be precluded at trial from offering any evidence concerning the confidential material. Where, as here, the matter sought may well be adverse to the claimants' cause, however, the remedy's shortcomings are obvious: having no intention to offer the damaging evidence at trial, an

order of preclusion is a small price to pay to keep the records out of the defendants' hands. *(See, Yetman v St. Charles Hosp.,* 112 AD2d 297, *supra.)* We do note, however, that while the medical records remain privileged, under *Williams v Roosevelt Hosp.* (66 NY2d 391, *supra)* the defendants may be able to obtain the information contained therein through the direct examination of Danielle. Beyond that the solution to this dilemma lies with the Legislature or the appellate courts.

Thus, although we find the material sought relevant based on the uncontroverted affidavit of the State's medical expert *(see, Yetman v St. Charles Hosp., supra),* in the absence of a waiver we cannot order disclosure. We can, however, hold that under the *Hughson* rule, should Danielle or the siblings adhere to the claim of privilege, the claimants will be precluded at trial from offering any evidence with respect to the privileged matter. Moreover, defendants may, should they desire, further depose Danielle with respect to any nonprivileged facts of her or the siblings' medical history. *(See, Williams v Roosevelt Hosp.,* 66 NY2d 391, *supra.)*

Finally, with respect to the siblings' educational records, they are not privileged but are relevant to the question of whether Chaim's injuries resulted from the alleged malpractice or were congenital. They must, therefore, be produced. *(Dalley v LaGuardia Hosp.,* 130 AD2d 543; *Pena v Kernisant,* NYLJ, Aug. 16, 1988, at 20, col 4, *supra; see, Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403.)