In the Matter of NEW YORK COUNTY DES LITIGATION.

First Department, May 28, 1991

## APPEARANCES OF COUNSEL

*Mark R. Bower* of counsel *(Sybil Shainwald* with him on the brief; *Shainwald & Bower,* attorneys), for DES Liaison Committee, plaintiffs-appellants.

*Russel H. Beatie, Jr.,* of counsel *(Samuel J. Abate, Jr.,* and *Philip J. Miller* with him on the brief; *Brown & Wood,* attorneys), for Eli Lilly & Company and others, defendants-respondents.

*A. Edward Grashof* of counsel *(Joanne Williams* with him on the brief; *Winthrop, Stimson, Putnam & Roberts,* attorneys), for Rexall Drug Company, defendant-respondent.

*David J. Fleming* of counsel *(Ann M. McHale* with him on the brief; *Dickson, Carlson & Campillo,* attorneys), for E.R. Squibb & Sons, Inc., defendant-respondent.

## OPINION OF THE COURT

Asch, J.

In approximately 400 actions involving some 800 plaintiffs seeking damages against various drug company defendants for injuries allegedly incurred due to the use of a diethylstilbestrol (DES) by the mother before plaintiff's birth, defendant companies sought authorizations enabling them to obtain copies of the hospital and medical records of plaintiff's mothers, fathers, siblings and other family members. Defendants urged that this medical information of nonparty family members was necessary to show the claimed injuries were not the result of *in utero* exposure to DES but rather the product of a genetic or hereditary origin.

Plaintiffs opposed this discovery request on the ground such medical information fell within the scope of the physician-patient privilege. (CPLR 4504.)

The IAS court determined there was a presumption that nonparty family members had provided medical information to the plaintiffs and that the furnishing of the confidential information constituted a "waiver" of the physician-patient privilege on the part of such family member. The court, however, noted that such presumption was a rebuttable one,

and individual family members could apply for relief if they asserted their privilege had not been waived.

The IAS court stated in pertinent part: "The taking of a detailed family history by a physician is generally a routine part of the treatment process, especially, it appears, in the context of the care and treatment of conditions which are known to possess a strong hereditary element. In almost every case in which a DES plaintiff has consulted a physician, she has supplied information, which has become part of her medical record, concerning the medical history of her family members. Such information is often quite detailed, and of a personal and confidential nature. It must be presumed that the plaintiff received the confidential information from the family members themselves, either directly or through an intermediary. The act of providing this confidential information to plaintiff constitutes a waiver of the physician-patient privilege on the part of the family member who can therefore, be compelled to provide further information on disposition and execute authorizations to obtain medical and hospital records."

The courts of this State have been confronted by demands by defendants for the medical histories of plaintiffs' mothers in numerous medical malpractice cases brought after the mothers have given birth to brain damaged children. In these actions, the mothers of these infant plaintiffs asserted the physician-patient privilege on the grounds that they were nonparties. The courts have repeatedly noted that a mother's medical records pertaining to the period when the infant was *in utero* are discoverable on the ground that there can be no severance of the infant's prenatal history from the mother's medical history. *(See, Sibley v Hayes 73 Corp.,* 126 AD2d 629; *Yetman v St. Charles Hosp.,* 112 AD2d 297; *Herbst v Bruhn,* 106 AD2d 546; *Scharlack v Richmond Mem. Hosp.,* 102 AD2d 886; *Lezell v State of New York,* 142 Misc 2d 837.) These courts, however, have also uniformly indicated that with respect to the mother's other medical records, such material was protected by the physician-patient privilege (CPLR 4504) unless a waiver of the privilege is found based upon plaintiff's reference to the mother's medical history and a demonstration has been made that such medical information, beyond the period when the plaintiff was *in utero,* is relevant to the issue in controversy and is material and necessary to the defense.

We find the IAS court's creation of a presumption, albeit, a rebuttable one, that all nonparty family members waived

their right of confidentiality over their medical histories and files because at one point or another they "must have" directly or indirectly made a disclosure to plaintiff to be erroneous.

The mere fact that a relative, distant or near in terms of kinship, has commenced a medical malpractice action alleging a birth defect should not subject all her relatives to the "long arm" reach of the law authorizing their medical histories opened to all. While the court never addressed or defined the term "family member" the body of the decision and order deals with the history of one's mother, father, grandparents, uncles, aunts, cousins, nephews, etc. If a plaintiff relayed information to a doctor that her second cousin had endometriosis and was sterile, such factor might be totally unrelated to plaintiff's condition. It could be the result of diet, environment, or the working conditions of the second cousin or have a congenital source from a branch of the family which has no connection to the DES family tree member. That second cousin should not be "presumed" to have waived her confidentiality and be unnecessarily burdened with the necessity of appearing to rebut the presumption of waiver. The requirement of forcing such unsuspecting third parties to retain counsel to fend off demands for private medical documents should not be countenanced without a much stronger predicate for such disclosure. Clearly, defendant drug companies could abuse such an open-ended discovery device, employing it as a device to harass and embarrass nonparties while delaying plaintiffs' actions.

The injured DES plaintiffs have waived the medical privilege as to their own histories and records, and have supplied the defendants-respondents with executed authorizations permitting discovery of their medical records. Since the injured plaintiffs' medical histories for the period *in utero* are inseparable from those of their mothers, those records should be discoverable especially since the plaintiffs have indicated that they are agreeable to supplying authorizations for their mother's medical records for the duration of their gestations. *(See, Yetman v St. Charles Hosp.,* 112 AD2d 297.) However, the plaintiffs are not required to turn over their mother's medical records beyond the gestation period; nor are the more distant members of their families required to release medical records. With respect to these nonparties, defendants can proceed pursuant to the provisions of the CPLR (3101 [a] [4]; 3106 [b]) on an individual basis as they deem necessary and material

with the nonparties and plaintiff free to interpose any defense of privilege, etc., which then can be decided by the IAS court. The plaintiff will, of course, be precluded at trial from introducing evidence concerning matters as to which the privilege has been asserted *(see, Sibley v Hayes 73 Corp., supra,* at 631, and cases cited therein). We note parenthetically that in *Enright v Lilly & Co.* (77 NY2d 377), the Court of Appeals has determined that the liability of manufacturers of DES should not be extended to a so-called "third generation" plaintiff.

As science and technology have advanced, they have also brought in their wake serious problems to humanity, as is evidenced by this case. They have also threatened our most personal of citadels, privacy, to an extent never contemplated by Warren and Brandeis in 1890 (Warren and Brandeis, *The Right To Privacy,* 4 Harv L Rev 193 [1890]).

Fortunately, both the Federal and State courts have increasingly accepted the idea that a right of privacy exists *(Griswold v Connecticut,* 381 US 479). It has been recognized that the protected zone of privacy encompasses the avoidance of disclosure of personal matters. *(See, Whalen v Roe,* 429 US 589, 598-600.)

The privacy interests of the nonparty relatives of the DES plaintiffs are certainly deserving of protection since the broad discovery sought herein would necessarily (and, indeed, is intended to) invade the "protected 'zone of privacy' " that encompasses the avoidance of "disclosure of personal matter" *(supra,* 429 US, at 598-599).

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered August 31, 1990 which, *inter alia,* held that defendant pharmaceutical companies were entitled to authorizations enabling them to obtain copies of hospital and medical records of a family member of plaintiff when the plaintiff had previously provided medical information about such member, should be modified, on the law and facts, and in the exercise of discretion, to limit the disclosure of such records to the ingesting mother's medical history during the period of gestation, and otherwise affirmed, without costs and disbursements.

SULLIVAN, J. P., ROSENBERGER, WALLACH and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on August 31, 1990, modified, on the law and facts, and in the exercise of discretion, to limit the disclosure of such records to the ingesting mother's medical history during the period of gestation, and otherwise affirmed, without costs and disbursements.