SHARON KUNZ *et al.*, as Parents and Next Friends of Kurt Kunz, a Minor, Plaintiffs-Appellants, v. SOUTH SUBURBAN HOSPITAL *et al.*, Defendants-Appellees (Bruce R. Pfaff, Contemnor-Appellant).

First District (2nd Division)    No. 1—99—2052

Opinion filed December 24, 2001.

Bruce R. Pfaff & Associates, Ltd., of Chicago (Bruce R. Pfaff, of counsel), for appellant Bruce R. Pfaff.

Price Tunney Reiter & Bruton, of Chicago, for appellee Neil Levie.

Anderson, Bennett & Partners, of Chicago, for appellee Ingalls Memorial Hospital.

Michael C. Kominiarek, of French Kezelis & Kominiarek, P.C., of Chicago, for appellee South Suburban Hospital.

Edward H. Nielsen, of Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Scott L. Howie, of counsel), for other appellees.

JUSTICE CAHILL delivered the opinion of the court:

We address a discovery issue in this appeal that implicates the physician-patient privilege. The question before us is whether a parent who files a medical malpractice action on behalf of one child may, by answering certain questions and raising certain issues in the course of discovery, waive the physician-patient privilege that shields the medical records of her other children. The defendants in this case persuaded the trial court that the records were discoverable. Counsel for the plaintiff refused to produce the records. He was then held in contempt and fined. Counsel now appeals the contempt order. We hold that the medical records relating to the mother's pregnancies and deliveries are discoverable, as well as the records of the minor plaintiff's siblings as they relate to their births, when, and only when, the privilege is waived. But we hold that subsequent medical records of the siblings are not discoverable. We affirm in part, reverse in part and vacate the contempt order.

Sharon and Karl Kunz filed a negligence suit on behalf of their son Kurt, who suffers from cerebral palsy. Plaintiffs allege Kurt's present condition was caused by defendants' negligence in the course of Kurt's birth. Kurt was delivered at South Suburban Hospital by Dr. John Bush. Dr. Neil Levie provided prenatal care. Dr. Perry Gilbert, the radiologist who interpreted Sharon's ultrasound before Kurt's birth, was an agent of Ingalls Memorial Hospital and Dr. Harold Lipschutz Radiology, Ltd., n/k/a Radiology Imaging Consultants, S.C.

Defendants were able to obtain court orders compelling plaintiffs to produce treatment records for Sharon's earlier pregnancies, in 1988 and 1990, that resulted in the births of Kurt's two siblings. They also obtained orders compelling the production of subsequent medical records of those siblings. Defendant South Suburban Hospital had already obtained records associated with the 1988 birth of one of the siblings at South Suburban. Plaintiffs moved to bar the use of the records of the 1988 birth. Dr. Levie moved to compel the records from the 1990 birth at an Indiana hospital of the other sibling. Dr. Gilbert's counsel then filed an affidavit from an anonymous consultant explaining why the records would be relevant to an expert opinion about the causes of Kurt's cerebral palsy. Dr. Levie's counsel filed an affidavit stating that a neurologist said there is a reasonable likelihood that the records might affect the opinions he or she could reach about the causes of Kurt's condition.

Plaintiffs moved to strike the affidavits and, in the alternative,

moved to compel the appearance of the unnamed consultant and neurologist to answer questions about the affidavits in compliance with section 2—1105 of the Code of Civil Procedure. 735 ILCS 5/2— 1105 (West 1998). The court denied plaintiffs' motions. Plaintiffs' counsel then refused to produce the treatment records of Sharon's second pregnancy, the 1990 birth and the subsequent medical records of Kurt's siblings. Plaintiffs' counsel was held in contempt and a sanction was imposed, from which he appeals.

We first address two motions taken with the case. Defendants first moved to dismiss plaintiffs, as named appellants, because they are not proper parties to the appeal of a contempt order. We agree. A discovery order compelling production is appealable only through a contempt order and imposition of a sanction. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171, 429 N.E.2d 483 (1981). Plaintiff's counsel is the only proper appellant in this appeal. See *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 715 N.E.2d 743 (1999). The motion to dismiss Sharon and Karl Kunz as appellants is granted.

Defendants also moved to dismiss a part of the appeal that claims as error the denial of the plaintiffs' motion to strike the affidavits of defendants' experts. Discovery orders are not appealable in a pending case. They are reviewable on appeal from the final order. *Silverstein*, 87 Ill. 2d at 171. The trial court's denial of plaintiffs' motion to strike the affidavits did not resolve the litigation on its merits, nor was the denial "cast in terms of a contempt proceeding imposing sanctions" (*Silverstein*, 87 Ill. 2d at 171), which would allow review. 155 Ill. 2d R. 304(b)(5). We have no jurisdiction over the trial court's denial of plaintiffs' motion to strike the affidavits of defendants' experts. Defendants' motion to dismiss that portion of the appeal is also granted.

We turn to the contempt order prompted by counsel's refusal to comply with court-ordered discovery. The trial court is afforded great latitude in discovery matters and we will not disturb the trial court's ruling absent a manifest abuse of discretion. *D.C. v. S.A.*, 178 Ill. 2d 551, 559, 687 N.E.2d 1032 (1997).

A person's medical history and records are subject to the right of privacy, which may not be invaded in the absence of waiver. See *Kunkel v. Walton*, 179 Ill. 2d 519, 689 N.E.2d 1047 (1997). "[T]he medical records of nonparties are protected by the physician-patient privilege and are not discoverable." *In re D.H.*, 319 Ill. App. 3d 771, 774, 746 N.E.2d 274 (2001). The privilege "will often act to bar what is clearly relevant and material information, since the privilege pertains to any information which a physician obtains 'in attending any patient in a professional character, necessary to enable him or her

professionally to serve such patient.' " *D.H.*, 319 Ill. App. 3d at 775, quoting *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 446, 564 N.E.2d 922 (1990). In *Parkson v. Central Du Page Hospital*, 105 Ill. App. 3d 850, 435 N.E.2d 140 (1982), a patient sued a hospital, then moved to discover records of other patients who received similar treatment from the hospital. The trial court ordered the records produced with the names of the patients deleted. We reversed, holding:

> "Although the Illinois statute on the physician-patient privilege exempts civil malpractice actions, we believe that that exception should be limited to only allow the disclosure of the records of the patient who is bringing the malpractice action. A broadening of that exception to allow the disclosure of communications involving patients who are not parties to the litigation would neither serve a public interest nor the private interests of those nonparty patients." *Parkson*, 105 Ill. App. 3d at 855.

See 735 ILCS 5/8—802 (West 1998).

Using similar reasoning, courts in other states have refused to find waiver of the physician-patient privilege when a mother brings suit on behalf of a child for injuries suffered during childbirth. "By suing in her representative capacity as the mother of the infant plaintiff, the mother did not waive her physician-patient privilege even though she alleged in the bill of particulars that the defendants failed to record or appreciate her medical history." *Murphy v. LoPresti*, 232 A.D.2d 461, 462, 648 N.Y.S.2d 169, 170 (1996). The *Murphy* court held that the mother only waived the privilege for records when the child was *in utero*. See also *Palay v. Superior Court*, 18 Cal. App. 4th 919, 22 Cal. Rptr. 2d 839 (1993).

A Michigan court found the privilege extended to the medical records of a minor plaintiff's siblings. *Dierickx v. Cottage Grove Hospital*, 152 Mich. App. 162, 393 N.W.2d 564 (1986). "Although [the minor plaintiff's siblings] Katie and Kimberly are related to plaintiffs, they are not parties to this action. The existence of a genetic defect may be an issue in this litigation, but Katie and Kimberly (or their representatives) have not placed the health of Katie and Kimberly in controversy. Thus, they have not waived the privilege." *Dierickx*, 152 Mich. App. at 167, 393 N.W.2d at 566. "Further, plaintiffs have not implicitly waived the statutory privilege as to Katie and Kimberly by bringing this lawsuit." *Dierickx*, 152 Mich. App. at 168, 393 N.W.2d at 567. The Michigan court held that "although the requested medical records may be relevant to defendants' theory of a genetically transmitted defect, the records are privileged and not subject to discovery." *Dierickx*, 152 Mich. App. at 169, 393 N.W.2d at 567.

In *Wepy v. Shen*, 175 A.D.2d 124, 571 N.Y.S.2d 817 (1991), defen-

dant hospital asked for discovery of medical and school records of the siblings of the minor plaintiff. The court held that information revealed by the plaintiff's parents during their depositions was "mere facts and incidents of the medical history" of the plaintiff's siblings, not confidential communications made to a doctor, and so was not privileged. But the court also held that the parents did not waive the physician-patient privilege as to the medical records themselves, despite expert testimony that there was a possible connection between plaintiff's neurological problems and her siblings' problems. *Wepy*, 175 A.D.2d at 125. "The mere fact that a relative, distant or near in terms of kinship, has commenced a medical malpractice action alleging a birth defect should not subject all her relatives to the 'long arm' reach of the law authorizing their medical histories opened to all." *In re New York County DES Litigation*, 168 A.D.2d 44, 47, 570 N.Y.S.2d 804, 805 (1991). "[T]he plaintiffs are not required to turn over their mother's medical records beyond the gestation period; nor are the more distant members of their families required to release medical records." *New York DES*, 168 A.D.2d at 47, 570 N.Y.S.2d at 806. The privilege shielding the medical background of nonparties "cannot be defeated by defendants' assertion that it is material and necessary to their defense." *Monica W. v. Milevoi*, 252 A.D.2d 260, 263, 685 N.Y.S.2d 231, 233 (1999). And in *D.H.*, this court found that "New York law is in accordance with Illinois law on the issue of whether the medical records of nonparties are protected by the physician-patient privilege with regard to both the facts and communications contained therein." *D.H.*, 319 Ill. App. 3d at 779.

We agree with the reasoning set out in the New York and Michigan cases. A reading of the Illinois cases, particularly *Kunkel*, *Parkson*, and *D.H.*, leads us to conclude that filing a medical malpractice lawsuit on behalf of a child, even when a genetic cause independent of medical malpractice may become an issue, does not thereby waive the physician-patient privilege in favor of the child's siblings.

Defendants next argue that Sharon expressly waived the privilege shielding her earlier pregnancies and the medical records of Kurt's siblings when she testified in her deposition about those pregnancies and the health of her children.

Sharon testified in her deposition that her eldest son was born in 1988 at South Suburban Hospital. Sharon was diagnosed with preeclampsia, or high blood pressure, during the pregnancy. The baby was delivered three weeks early by cesarean section. Sharon described her first child's present health as excellent. Her second child was born in 1990 at Munster Community Hospital in Indiana. There were no complications during the pregnancy and Sharon delivered the child

vaginally. Sharon testified that her second child's present health was also excellent.

Sharon then testified that, during her pregnancy with Kurt, her third child, she had problems with spotting and cramping, which she also had during her earlier pregnancies. She visited Dr. Levie on September 19, 1992, and told him that she felt her third pregnancy was progressing much like her first. She could not feel the baby moving and was suffering from high blood pressure. She also believed the baby was too small because her abdomen was not as large as it had been at the same point during her earlier pregnancies. She told Dr. Levie about her history of preeclampsia during her first pregnancy.

When Kurt was delivered, Sharon became concerned when she noticed on a monitor that the fetal heart rate was dropping. She testified that she had a "similar experience" during her first pregnancy when she was connected to a fetal monitor.

In *Yetman v. St. Charles Hospital*, 112 A.D.2d 297, 491 N.Y.S.2d 742 (1985), the defendants sought the mother's medical records of her other pregnancies. The court found that, although a mother's medical records for the period when the infant plaintiff was *in utero* are discoverable, the medical history of her other pregnancies is a matter that falls within the scope of the physician-patient privilege. *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 744-45. Absent waiver, defendants were precluded from compelling her to answer questions or disclose information about her medical history. *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 745. However, the *Yetman* court found that the mother waived the privilege when she revealed her past medical history to her child's treating physicians in the course of treatment for the child. *Yetman*, 112 A.D.2d at 298-99, 491 N.Y.S.2d at 745; see also *Lezell v. State*, 142 Misc.2d 837, 538 N.Y.S.2d 902 (1989); *Gilroy v. McCarthy*, 254 A.D.2d 325, 678 N.Y.S.2d 644 (1998). The *Yetman* court said:

> "We base our conclusion, in part, upon the fact that the mother, prior to the commencement of this litigation, revealed her past medical history, and, in particular, her history of numerous miscarriages, to various physicians for the purpose of aiding in the treatment of the infant plaintiff during the years subsequent to his birth. Significantly, this information was furnished by the mother, not in confidence with respect to treatment being provided to her, but rather in connection with the treatment of the infant plaintiff."
> *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 745.

■ In light of Sharon's deposition testimony about her earlier pregnancies and how they compared to the pregnancy and birth of plaintiff, we believe she has waived the physician-patient privilege regarding the medical records of her pregnancies and deliveries of her

first two children. *Yetman*, 112 A.D.2d at 298-99, 491 N.Y.S.2d at 745. But we find Sharon's deposition remark that her first two children's current health is "excellent" insufficient to waive the privilege as to the children's subsequent medical records. It is akin to the "facts and incidents of medical history." *Wepy*, 175 A.D.2d at 124-25, 571 N.Y.S.2d at 818. "Facts and incidents of medical history" are distinguishable from communications to a physician. Communications are privileged; facts are not. *Wepy*, 175 A.D.2d at 124, 571 N.Y.S.2d at 818, citing *Upjohn Co. v. United States*, 449 U.S. 383, 395, 66 L. Ed. 2d 584, 595, 101 S. Ct. 677, 685 (1981). Unlike the birth records of the siblings, which are closely related to the pregnancy records of Sharon and implicate her past medical history, the subsequent medical history of the siblings was not a subject of her deposition and is unrelated to possible medical malpractice associated with Kurt's birth. Sharon's statement that her sons' health is "excellent" was not a communication made to a doctor. It was a statement of opinion that is not privileged, so waiver does not apply. The trial court abused its discretion in ordering contemnor to produce the health records of Kurt's siblings subsequent to their birth.

We affirm the trial court's order directing contemnor to produce Sharon's medical records for the periods during her first two pregnancies and deliveries. We reverse the court's order directing production of Kurt's siblings' medical records after birth. Because contemnor acted in good faith to test the validity of a contempt order on appeal, we vacate the trial court's order of contempt and the fine of $10 per day. *Reda v. Advocate Health Care*, 316 Ill. App. 3d 1115, 1119, 738 N.E.2d 153 (2000). We also grant defendants' motions to dismiss plaintiffs from this appeal and dismiss the portion of the appeal of the trial court's denial of plaintiffs' motion to strike the affidavits of defendants' experts.

The judgment of the circuit court of Cook County is affirmed in part, reversed in part and vacated in part; motions to dismiss granted.

Affirmed in part, reversed in part and vacated in part; motions granted.

GORDON and COUSINS, JJ., concur.