2022 IL App (1st) 210201-U

FIRST DISTRICT,
FIRST DIVISION
August 29, 2022

No. 1-21-0201

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE MARRIAGE OF: | ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| AMY HANSON STOLL, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 20 D 230309 |
| v. | ) ) | |
| ANDREW STOLL, | ) ) ) | Honorable Debra Walker, Judge Presiding. |
| Respondent-Appellant. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) In dissolution of marriage proceeding, respondent's mental health records were not discoverable because neither the respondent nor any witness on his behalf testified regarding those records. (2) Respondent's remaining medical health records were discoverable pursuant to an exception to the physician-patient privilege for litigation in which a patient's physical or mental condition is at issue.

¶ 2    Petitioner Amy Stoll filed for dissolution of marriage against respondent Andrew Stoll.

Amy moved to restrict Andrew's parenting time based on allegations of drug use and mental

health issues. The trial court ordered disclosure of Andrew's mental and medical health records

and, following Andrew's failure to comply, placed him in "friendly" civil contempt. Andrew appealed pursuant to Rule 304(b)(5) (Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016) (allowing interlocutory appeals from contempt orders imposing a monetary penalty)), arguing that the confidentiality of his records is protected from disclosure by both the therapist-patient privilege and the physician-patient privilege. We affirm in part, reverse in part, and vacate the contempt order.

¶ 3                                BACKGROUND

¶ 4        Amy and Andrew were married in 2010. They have three children of the marriage: twins born in 2012 and a son born in 2019.

¶ 5        On August 13, 2020, Amy filed for dissolution of marriage. On October 26, 2020, she asked the court to appoint a guardian *ad litem* (GAL) to represent the best interests of the minor children in resolving various issues, including the determination of parenting time and allocation of parental responsibilities. Amy alleged that on January 27, 2020, Andrew told her there were "ghosts in the house" who were "throwing stuff in [his] eyes," and he spent most of the day in the bathroom attempting to "steam them out." Amy believed he was experiencing drug-induced hallucinations. Andrew's mother, Christine Stoll, brought him to Evanston Hospital. Amy believes he was transferred to the inpatient behavioral unit of St. Joseph's Hospital the next day, where he was treated for "what Amy believes to be stabilization of his mental health issues from taking amphetamines or recreational drugs."

¶ 6        Upon being released from the hospital on February 2, Andrew did not move back into the marital home. From February through April, he had "little communication with Amy or the children." On July 26, Andrew told Amy he was moving to "another Airbnb" and would text her about spending time with the children. On July 29, Andrew called and told Amy "he did not

know where he had been for the past three days—all he knew was that he woke up in the Emergency Room due to dehydration." Amy believes Andrew was hospitalized for a "similar episode to that in January."

¶ 7    On November 13, 2020, Andrew filed an "Emergency Motion to Set Parenting Schedule *Instanter*" alleging that Amy was refusing to allow parenting time and willfully withholding the children from him. The parties had been operating under an informal agreement to allow Andrew "some" parenting time pending attending mediation. After completing mediation, Amy withdrew from the informal agreement and told Andrew he "will not see [her] children again until a court orders her to." (Internal quotation marks omitted.) Andrew's motion requested the imposition of a "reasonable" parenting schedule that "works up to an equal, 50/50 schedule."

¶ 8    Amy filed a "Counter-Emergency Motion for Supervised Parenting Time" alleging "serious concerns regarding Andrew's fitness to have unsupervised let alone overnight parenting time with the children." She alleged that Andrew "refuses any aftercare treatment since his 5 day mandatory hold mental health hospitalization" and that "Andrew's behavior has become increasingly concerning and erratic." For example, he left her "bizarre voicemails" and would sometimes "talk very aggressively and rapidly sometimes not making any sense." On June 12 he visited the marital residence, called Amy "crazy" and a "psycho" in front of the children, refused to leave, and "became extremely combative," thus "forc[ing]" Amy to call the police. Amy claimed Andrew's actions endangered the children and asked the court to order supervised parenting time pending the appointment of a GAL.

¶ 9    On November 20, 2020, the trial court appointed Jean Conde as the GAL, ordered that Andrew's mother supervise his parenting time until further order of court, and set a January 7, 2021 hearing date on Andrew and Amy's cross-motions.

¶ 10    On November 23, 2020, Amy requested disclosure of "[a]ll mental health or medical reports or evaluations known to or obtainable by [Andrew] relating to the parties' or their child(ren) prepared by any health care provider, psychiatrist or a mental health professional." Andrew objected to disclosure, relying on the "doctor-patient privilege, the Health Insurance Portability and Accountability Act, and/or the Illinois Mental Health and Developmental Disabilities Act." Andrew also refused to disclose his mental and medical health records to the GAL.

¶ 11    On January 5, 2021, two days before the scheduled hearing, Andrew tendered "what purported to be a voluntary ten-panel hair follicle drug test" completed on December 31, 2020. He intended to introduce the results of the test at the hearing to show he had tested negative for 10 different drugs. Amy filed an emergency motion to continue the hearing "to a future date after Andrew has produced any and all mental and medical health records" requested in discovery and "complied with the guardian ad litem's request for medical or mental health records." She argued that Andrew "cannot use the information related to his medical and mental health and drug use as both a sword and a shield. Andrew needs to produce all information and not just the ones he believes helps his case." In the alternative, Amy requested that Andrew be barred from offering evidence and testimony related to drug testing at the hearing.

¶ 12    The trial court denied the continuance. At the January 7 hearing, the GAL advised the court that Andrew told her that he "crashed or had a nervous breakdown" in January and was transferred to St. Joseph's Hospital because Evanston could not accommodate his C-Pap machine. The GAL also spoke to Andrew's mother, a retired physician, who "could not put her finger on exactly what happened" but suggested it "could *** have been sleep deprivation." Regarding the July incident, Andrew claimed he was hospitalized because he passed out while

running due to dehydration. The GAL acknowledged that Amy had a different version of events, but due to Andrew's refusal to disclose his medical records, "I can't evaluate what happened and I can't evaluate how to prevent it. Perhaps nothing else will happen." She stated that Andrew was a loving and involved parent and, prior to the parties' separation, would sometimes stay home with the children while Amy traveled for work.

¶ 13 The GAL also indicated that Andrew's drug test was "from a lab that [the courts] frequently use" and which "goes back six months usually." The court agreed with the GAL that "[t]his really just comes down to whether or not Dad has some mental health issues that are impacting his ability to properly parent his kids," expressing concern that he might have another "crash" while the children were in his care "that could endanger them if *** there wasn't another adult present."

¶ 14 Amy's counsel argued that Andrew had waived confidentiality of his health records, and the trial court asked the parties to address that issue. Amy's counsel argued that Andrew put his health at issue at the prior hearing on November 20, 2020:

"[W]e discussed *** those two incidents of hospitalization and [Andrew's counsel] gave explanations for what happened. *** [T]hey alleged the first one was, you know, a mental break. The second one they said was dehydration. So they put it out there. And in fact, you found[] that [Andrew's counsel] was arguing very, very much for her client and very effectively, but at one point she was arguing so hard about his mental health in the dehydration hospitalization that you asked her, [counsel], do you have the medical records?

* * *

So my frustration is we're using this as a sword and a shield. We're saying, oh, it's just dehydration, and oh, maybe it was, you know, he was hospitalized from marital strife. When my client was told by a social worker that he did test positive for drugs in January."

¶ 15    Andrew's counsel responded that from February to November 2020, Andrew had unsupervised parenting time by agreement and that the hair follicle test showed "he doesn't have drug issues." Counsel argued that Andrew was not required to disclose his health care records because Amy, not Andrew, put his health at issue. The trial court asked, "[W]hat's your hesitation to produce records that your client had heatstroke in July?" Counsel explained that if he "opened the door" by voluntarily producing any medical records, he would waive privilege for all records.

¶ 16    The trial court noted that mental and physical health is an element in every case and it "need[ed] full information about that element in order to make fully informed decisions as to what's in the best interest of the children." Although the court recalled "quite a bit of that hearing from the 20th," the parties were still given an opportunity to submit legal memorandums on the issue of disclosure. Andrew's oral motion for increased parenting time was denied "[o]ut of an overabundance of caution."

¶ 17    After another hearing on January 28, the trial court ordered Andrew to submit his mental and medical health records to be reviewed *in camera* by the court to determine "what, if anything, is to be released to counsel." The court reasoned that "the best thing to do is to err on the side of more data than less data in making decisions." The court also found that Andrew had placed his mental and physical health at issue in the proceeding:

"[Andrew] has raised that he, you know, was out running and he sustained dehydration and he said that was a defense. *** [Y]ou can't raise something as a mental and physical health concern or say what you say it was, mental or physical health, and then not let them be able to explore what it was."

¶ 18     On February 8, the court convened a hearing to clarify "a few issues in dispute with respect to [the] respective court orders that were submitted after [the] last hearing." At that time, Amy's counsel reiterated that Andrew's counsel had put his health at issue at the November 20 hearing by making "representations about what the medical record said specifically." Andrew's counsel had a "different take" on what happened on November 20. The court ultimately indicated that what "was put into argument by [Andrew's] counsel *** [was] binding upon him."

¶ 19     On February 10, the court entered a written order requiring "the disclosure of [Andrew's] medical and mental health records and communications as a result of his hospitalizations and treatments that occurred in January/February 2020 and July 2020 for *in camera* review." The court further ordered:

> "3. Over Respondent's objection, by noon on February 10, 2021, the Respondent shall disclose the name(s), identity(ies), and address(es) of the treater(s), institution(s), and hospital(s) that provided care and/or treatment in connection with the January/February 2020 and July 2020 hospitalizations and treatments."

¶ 20     Andrew did not comply with paragraph 3 of the order, and on February 22, 2021, the trial court granted his oral motion to be held in "friendly" indirect civil contempt of court, imposing a penalty of $1 for each day he failed to comply.

¶ 21                                                    ANALYSIS

¶ 22          Initially, Amy argues that Andrew's brief should be stricken for failure to comply with

Rule 341, which provides, in relevant part, that appellate briefs "shall contain the contentions of

the appellant and the reasons therefor, with citation of the authorities and the pages of the record

relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Andrew's brief contains ample citations to

authority and discussion of how those citations pertain to the facts of this case, with adequate

citations to the record. Amy also argues that Andrew's statement of facts does not "contain the

facts necessary to an understanding of the case" (Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020))

because there is no "specific discussion of the substance of the November 20, 2020

proceedings," which is not part of the record. "[W]e will not strike a party's statement of facts

unless it includes such flagrant improprieties that it hinders our review of the issues." *John

Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009). Since the record contains

facts sufficient to decide this case, our review of the issues is not hindered.

¶ 23          "The review of a contempt finding necessarily requires review of the order upon which it

is based." *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968 (2004) (explaining that "the

only order that is subject to review is the *order* finding [respondent] in contempt" (emphasis in

original)) (citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001)). Here, the contempt finding is based

upon the court's February 10, 2021 discovery order. As this issue involves application of law to

undisputed facts, our review is *de novo*. *Norskog*, 197 Ill. 2d at 71-72. Andrew argues that the

trial court's order was in error because (1) the issue of disclosure was not properly before the

trial court; (2) his mental health records are protected by therapist-patient privilege; and (3) his

remaining medical health records are protected by physician-patient privilege.

¶ 24                                                    Local Rule 13.4

¶ 25         Andrew erroneously argues that Amy never filed a written motion requesting disclosure of his records in violation of Local Rule 13.4, which provides that "[a]ll motions, petitions and applications shall be made in writing." Cook Co. Cir. R. 13.4(a)(i)(a)). The record shows that on January 6, 2021, Amy filed a written motion to continue the January 7 hearing "to a future date after Andrew has produced any and all mental and medical health records in response to Paragraph 39 of Amy's First Request for Production of Documents and until Andrew has fully complied with the guardian ad litem's request for medical or mental health records." In addition, at the January 7 hearing, the parties were allowed to file legal memorandums regarding the disclosure of Andrew's medical and mental health records. Under these circumstances, Local Rule 13.4 was not violated.

¶ 26                                              Therapist-Patient Privilege

¶ 27         Andrew argues his mental health records are statutorily privileged under the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2020)) (Mental Health Act). The Act bars nonconsensual disclosure of mental-health-related records, subject to the following relevant exception:

> "Records and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense. *** [I]n any action brought or defended under the Illinois Marriage and Dissolution of Marriage Act, *** mental condition shall not be deemed to be introduced merely by making such claim and shall be deemed to be introduced only if the recipient or a witness

on his behalf first *testifies* concerning the record or communication." (Emphasis added.)

740 ILCS 110/10(a)(1) (West 2020).

"[R]ecord," is defined, in relevant part, as "any record kept by a therapist or by an agency in the course of providing mental health *** service to a recipient concerning the recipient and the services provided." 740 ILCS 110/2 (West 2020).

¶ 28    Andrew offered no testimony in this case regarding his mental health records or communications. "Testimony is [e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." (Internal quotation marks and emphasis omitted.) *Dep't of Central Management Services v. Illinois Labor Relations Board*, 2018 IL App (4th) 160827, ¶ 59. Amy argues that the testimony requirement was satisfied by (1) the GAL's January 7 report to the court in which she represented that Andrew attributed the January and July 2020 incidents to a "nervous breakdown" and "dehydration" respectively, and (2) his counsel's arguments before the court. We do not agree that the unsworn statements of the GAL and counsel regarding Andrew's mental health are testimony. See *In re Marriage of Saheb and Khazal*, 377 Ill. App. 3d 615, 626 (2007) (GAL's oral report to the court at a pretrial conference did not constitute testimony).

¶ 29    Amy argues that Andrew may not raise the testimony requirement of section 10(a)(1) for the first time on appeal, since he did not raise this issue in the trial court. See *In re Marriage of Schneeweis*, 2016 IL App (2d) 140147, ¶ 46 ("A party may not raise on appeal arguments never raised in the trial court"). However, the record reflects that Andrew did raise the issue in his arguments at the February 8 hearing, as follows:

"ANDREW'S COUNSEL: I would suggest to the Court that trying to bootstrap something that Ms. Conde, who has not testified in this case, she has not been cross-

examined, I mean there's just no facts at all for which this Court to base a finding on that my client affirmatively put his mental health at issue. ***

THE COURT: *** I know that perhaps Ms. Conde was not sworn at the hearing *** but she's an officer of the court and she made representations on the record upon which I am relying, so."

Accordingly, Andrew has not forfeited the testimony requirement argument.

¶ 30    In arguing that Andrew is bound by his counsel's representations regarding his medical records, Amy relies on *In re Marriage of Marr*, 264 Ill. App. 3d 932, 935 (1994). In *Marr*, we observed that "[w]here a party is present in court and permits his attorney to act on his behalf, the party may not subsequently deny his attorney's apparent authority." *Id.* However, since *Marr* did not involve the issue of waiver under section 10(a)(1) of the Mental Health Act, Amy's reliance on that case is misplaced.

¶ 31    The record establishes that no testimony was offered on Andrew's behalf concerning "records or communications" regarding Andrew's mental health in this case. Therefore, the trial court erred in ordering the disclosure of those records.

¶ 32                                   Physician-Patient Privilege

¶ 33    Andrew argues his medical health records are protected by physician-patient privilege as set forth in section 8-802 of the Code of Civil Procedure, which provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2020). When this section conflicts with the Mental Health Act, the latter controls. *Id.* Thus, while Andrew's *mental* health records are privileged under the Mental Health Act, the remainder of his *medical* records are governed by section 8-802.

¶ 34        The statute contains several exceptions in which the privilege does not apply, including "all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802 (West 2020). For the privilege to be inapplicable, the patient, not the opposing party, must affirmatively put his health at issue. *Palm v. Holocker*, 2018 IL 123152, ¶ 33 (legislature's intent in enacting section 8-802(4) was to "codify the near-universally recognized principle of waiver by implied consent," not to vitiate the privilege any time a party's health is relevant to an action). Amy argues that Andrew affirmatively raised his physical condition as a defense through (1) his counsel's arguments at the November 20, 2020 hearing in which she made representations about his medical records; (2) his statements to the GAL regarding the January and July 2020 incidents; and (3) the 10-panel drug test which he intended to introduce at the January 7, 2021 hearing.

¶ 35        It is well established that the appellant has the burden of presenting a sufficiently complete record to support his claims of error on appeal. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). "Absent a sufficient record, a reviewing court presumes that the trial court's order conformed to the law and had a sufficient factual basis." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 9. Absent a transcript or bystander's report of the November 20, 2020 proceeding, we presume the trial court correctly concluded that counsel affirmatively raised Andrew's medical condition as a defense at the November 20 hearing, thus waiving his physician-patient privilege.

¶ 36                                      CONCLUSION

¶ 37        For the foregoing reasons, we find that Andrew's mental health care records are not discoverable under the Mental Health Act. We reverse that part of the trial court's February 10, 2021 order directing Andrew to produce his mental health care records, and affirm that part of

the order directing Andrew to produce his remaining medical health care records. Because Andrew acted in good faith to test the validity of a contempt order on appeal, we vacate the trial court's contempt order and the fine imposed. See *Kunz v. South Suburban Hospital*, 326 Ill. App. 3d 951, 958 (2001).

¶ 38        Affirmed in part and reversed in part, and remanded with instructions.