OPINION OF THE COURT
Robert W. Doyle, J.
Motion by defendant, Burton Rochelson, M.D., pursuant to CPLR 3101 (d) (1) (i) is granted and the cross motion of plaintiff Rosemary Spratt for an order of preclusion is determined as follows:
This is an action to recover damages for personal injuries sustained by plaintiff Nicholas Spratt, an infant, by his mother and natural guardian, Rosemary Spratt, as a consequence of the alleged medical malpractice of defendants Burton Rochelson, M.D., David Alan Baker, M.D., Allan Monheir, M.D., and University Associates in Obstetrics and Gynecology. Plaintiff suffers from, inter alia, severe cerebral palsy. It is alleged that defendants deviated from good and accepted medical practice during Rosemary Spratt’s labor and delivery, causing plaintiff’s injuries.
Defendant Rochelson now moves pursuant to CPLR 3101 (d) (1) (i) for further details in response to his demand for expert *537 witness information from plaintiff’s economist. In response to movant’s original demand, plaintiff forwarded the "report” of Les Seplaki, Ph D, which contains a curriculum vitae, a sketchy outline of "facts” taken into consideration in rendering Dr. Seplaki’s projections as to plaintiff’s damages for future loss of earnings and future medical expenses, and a series of seemingly disembodied charts and graphs containing, presumably, those projections and the factors used in Dr. Seplaki’s calculations. In response to defendant’s complaints of insufficiency, plaintiff’s counsel, by letter, has attempted to clarify Dr. Seplaki’s report. Unsatisfied, defendant Rochelson has made the Instant motion.
CPLR 3101 (d) (1) (i) provides in pertinent part: "Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion.”
While it appears at bar that plaintiff’s submissions adequately reveal the subject matter and the substance of the facts and opinions upon which Dr. Seplaki will testify, as well as his qualifications, a more detailed summary of the grounds of his opinions is required. Specifically, defendant is entitled to a further explanation as to how the alleged losses were computed and the manner in which the losses were converted to present value (see, Brossoit v OBrien, 169 AD2d 1019 [3d Dept 1991]). The submission here of incomprehensible charts and graphs accompanied by a skeletal explanation will not suffice.
Accordingly, defendant Rochelson’s motion is granted to the extent that plaintiff is directed to serve said additional statement upon defendants’ attorney within 15 days after service upon him of a copy of this order with notice of entry, which service defendant shall effect forthwith.
The court now turns to plaintiff’s cross motion for an order of preclusion. The basis of plaintiff’s cross motion is defendants’ recent revelation (by way of CPLR 3101 [d] [1] [i] statement) that his experts had viewed "pathology samples” and would be basing testimony upon them. Through correspondence, it was further revealed that the samples were slides of placental material which defendants state are "con *538 sist[ent] with neonatal stroke being the cause of the infant plaintiff’s infarction rather than hypoxic/ischemic encephalopathy as claimed [by plaintiff].”
Plaintiff’s objection is twofold. First, it is claimed that Rosemary Spratt, Nicholas’s mother, never signed an authorization giving defendant access to "her” placental tissue. As Rosemary Spratt did not waive her physician/patient privilege, she argues, the materials were improperly obtained. Plaintiff points further to defendants’ statement that "duplicate slides made from re-cuts were provided and are being returned to the hospital”. From this, plaintiff urges an inference of "tampering”, complicity and unethical conduct: "It was unethical for * * * [Stony Brook] hospital [where defendant is employed] to disclose and furnish the material and it was unethical for the defendant or his representative to access the material. Clearly, the chain of custody has been broken and clearly there is no way to reconstruct or recreate the initial status quo.” Plaintiff concludes that defendants’ behavior warrants an order pursuant to CPLR 3103 (c) precluding defendant from introducing testimony concerning the pathology samples or concerning defendants’ theory of causation.
Defendant counters that an authorization was indeed executed as to the pathology samples. In support of this claim, defendant submits a copy of an authorization which states "I hereby authorize and request that you furnish [defendants’ attorneys] with a copy [of] CT scan films and other diagnostic tests relating to: dates of service: 2/18/86 and 2/22/86 Nicholas Spratt”. The authorization is given by William Spratt, Nicholas’s father, who is not a party to this action. Defendant argues that the tissue samples "belong” as much to Nicholas’s father as to his mother, and therefore, William Spratt could properly authorize access to them. Defendant states further that it was entirely proper to have his expert examine "additional slides made from the same specimen.” Defendant argues that such procedure is "authorized by law”. Finally, defendant avers that plaintiff conducted a prior examination of the slides, a statement which plaintiff’s counsel categorically denies.
Both parties, insofar as they argue over the scope of the authorization and William Spratt’s authority to give it, to this court’s mind, miss the point. By commencing this action on behalf of Nicholas and placing his physical condition in controversy thereby, Rosemary Spratt effectively waived Nicholas’s physician/patient privilege (see, Tiborski v Martorella, *539 188 AD2d 795 [3d Dept 1992]). As such, defendant became entitled to disclosure of records, reports and other items pertaining to plaintiffs injuries, diagnosis and treatment (see, Pizzo v Bunora, 89 AD2d 1013 [2d Dept 1982]). Plaintiffs waiver of the privilege was not dependent upon the issuance of an authorization.
Significantly, counsel for plaintiff does not argue that the slides of placental tissue are not probative or are otherwise irrelevant to the issue of causation of Nicholas’s injuries. Rather, counsel argues that Rosemary Spratt’s physician/patient privilege has been violated by release of the slides without her express waiver. Counsel grounds this assertion in Ms. Spratt’s "ownership” of the specimens in issue, i.e., as Ms. Spratt produced the tissue, it is her physician/patient privilege which extends to it. This argument no doubt springs from the line of appellate decisions which hold that a mother who, as here, commences a malpractice action on behalf of her child does not automatically waive her own privilege as regards her own medical records (see, e.g., Sibley v Hayes 73 Corp., 126 AD2d 629 [2d Dept 1987]).
However, placental tissue cannot be considered to per se "belong” to the birth mother alone. The placenta is a "temporary structure” which "serves as an organ of metabolic exchange between mother and fetus”, and therefore, of necessity is physically attached to both. Through the placenta, the fetus both "receives nourishment and expels waste products”. It is a structure upon which the fetus depends for its well-being and proper development. (See generally, 4C Gordy-Gray, Attorneys’ Textbook of Medicine, ]f 305.50.) It seems an easy extrapolation, therefore, that the placenta "belongs” as much to infant as to mother and that a privilege may be exerted with regard to samples of it by the infant. Notably, an exception to the rule that mothers do not waive their privilege in actions commenced on behalf of their infants exists as to the period when the infant plaintiff was in útero "during which time there [can] be no severance of the infant’s prenatal history from his mother’s medical history” (see, Scharlack v Richmond Mem. Hosp., 102 AD2d 886, 888 [2d Dept 1984]). This concept of "non-severability” would appear to be applicable in the instance at bar. Accordingly, the court holds that any physician/patient privilege extending to the slides in question herein has been effectively waived by commencement of this action.
Having stated that no privilege was violated by defendant’s viewing of the slides, the court nevertheless agrees that *540 the "better practice” would have been for defendant to procure the slides by notice to produce or demand for authorization specifically addressed thereto (cf., Martin v County of Monroe, 115 AD2d 990 [4th Dept 1985]). In that manner, plaintiffs would have been afforded an opportunity to voice their objections prior to disclosure, the court would have outlined the procedure it wished defendant to follow in obtaining the slides, and counsel for defendant Rochelson would have avoided the appearance of impropriety his actions have conjured. While defendant has acquired nothing which was not discoverable (see, Martin v County of Monroe, supra, at 991; Daniels v Sheffer, 56 AD2d 738 [4th Dept 1977]), defendant’s imprecise, conclusory explanations as to how, and if, the original slides were altered, what precisely "re-cuts” are and how they differ from the original, if at all, and the fact that the slides may have been removed from the hospital, prompt the court to seek further information before coming to its final determination of the cross motion. Specifically, the court seeks to ensure that the integrity of the original slides has been preserved (see, Cruz v Elhosseiny, 148 AD2d 412 [2d Dept 1989]), and that plaintiff’s experts will be able to view precisely what defendant’s experts viewed.
Accordingly, this matter is set down for a hearing before the Honorable R. W. Doyle on the 12th day of January 1995 at 9:30 a.m. at which time the parties may present evidence on these issues.