AYESHA EL-AMIN, as Duly Appointed Special Adm'r of the Estate of Na'eem Shahid, Deceased, Plaintiff-Appellee, v. MARY DEMPSEY *et al.*, Defendants (Mary Dempsey, Defendant-Appellant).

First District (5th Division)   No. 1—01—2173

Opinion filed March 29, 2002.

Brian P. O'Kane, of Weldon-Linne & Vogt, of Chicago, for appellant.

Hegarty & Heath, of Chicago (Terrence K. Hegarty and Timothy W. Heath, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

The plaintiff, Ayesha El-Amin, filed this medical malpractice action seeking recovery of damages for the death of her infant son pursuant to the Wrongful Death Act (740 ILCS 180/0.01 (West 2000)) and the Survival Act (755 ILCS 5/27—6 (West 2000)). She alleges that defendant Mary Dempsey failed to recognize the signs and symptoms of hyperbilirubinemia and failed to inform the codefendant doctors of the child's signs and symptoms of hyperbilirubinemia during her child's second and third days of life.

During the course of discovery, defendant Dempsey issued a subpoena for all the medical records of plaintiff El-Amin at the University of Illinois Hospital. The plaintiff moved to quash the subpoena asserting that such discovery would violate her physician-patient privilege and her right to privacy. At the hearing on plaintiff's motion, Dempsey withdrew her request for all of El-Amin's medical records and narrowed her request to include only the records relating to prenatal care from the period during which El-Amin was pregnant with her son. The trial court granted El-Amin's motion to quash, without prejudice, and requested the parties brief and argue the plaintiff's motion to quash Dempsey's narrowed request for El-Amin's prenatal care records. On March 8, 2001, the court entered an order quashing Dempsey's proposed subpoena despite Dempsey's limited request of only the plaintiff's prenatal care records for the term of her pregnancy.

On June 7, 2001, the court granted Dempsey's motion to certify the following question of law for interlocutory appeal regarding the discoverability of El-Amin's prenatal care records:

"Whether a medical malpractice defendant is entitled to obtain medical records pertaining to the prenatal care rendered to the plaintiff's decedent's mother during the term of her pregnancy with plaintiff's decedent, despite the mother's invocation of the physician-patient privilege and a right to privacy, where (1) the mother is both the plaintiff who filed the wrongful death cause of action on behalf of the decedent's estate and a beneficiary to the decedent's estate; and (2) where the plaintiff's decedent's death is alleged to have resulted 16 days after the decedent's birth as a result of the defendants' allegedly negligent care rendered in the first three days of the decedent's life[.]"

On July 30, 2001, we granted Dempsey's application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). For the reasons that follow, we answer that certified question in the affirmative.

On May 8, 1998, El-Amin gave birth to her son Na'eem Shahid in her home. Codefendant Dr. Zumhagen delivered the infant at approximately 3 a.m. On May 9 and May 10 of 1998, Dempsey evaluated the mother and child in the home and determined that the baby was jaundiced. On May 11, 1998, the child was admitted to the University of Illinois Hospital, where the child was diagnosed with hyperbilirubinemia and kernicterus. The plaintiff's decedent was discharged from the hospital on May 16, 1998. On May 24, 1998, the plaintiff's decedent was taken to the University of Chicago Hospital, where the infant was pronounced dead. A Cook County medical examiner listed the cause of death as "Sudden Infant Death Syndrome."

On May 12, 2000, El-Amin filed a multiple-count complaint, and in her first amended complaint, she alleged that Dempsey and certain other physician and corporate defendants were guilty of medical negligence that resulted in the death of her son. In response to Dempsey's interrogatories, the plaintiff disclosed that she had received prenatal care at Women's Health and Associates (affiliated with the University of Illinois Hospital) during the course of her pregnancy.

On November 6, 2000, Dempsey caused a subpoena to be issued to the University of Illinois Hospital requesting "any and all" of El-Amin's medical records. On November 13, 2000, El-Amin presented an emergency motion to quash Dempsey's subpoena. In support of her emergency motion to quash, El-Amin made three arguments. First, she argued that she was only a nominal plaintiff and that she had not placed her medical condition at issue by filing suit. Second, she argued that her medical records were nondiscoverable because the disclosure of her medical records would violate her constitutional right to privacy. Lastly, she asserted that the disclosure of her records would violate the physician-patient privilege, which she claims she did not waive. On November 13, 2000, the trial court granted El-Amin's motion to quash without prejudice. At that time, Dempsey proposed a narrower subpoena request for El-Amin's prenatal medical records only for the period that she was pregnant.

In response to Dempsey's new subpoena request, the court entered a briefing schedule regarding the discoverability of El-Amin's medical records for the period of her pregnancy. On March 8, 2001, however, the court entered an order quashing Dempsey's proposed subpoena.

Thereafter, Dempsey filed a motion pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) requesting the trial court to certify a question of law regarding the discoverability of El-Amin's prenatal care records during the term of her pregnancy. On June 7, 2001, the court granted Dempsey's motion and certified a question of law for interlocutory appeal, finding a substantial ground for a difference of opinion as to the court's order of March 8, 2001.

■ The standard of review of an interlocutory appeal, by permission of a certified question, is *de novo. Moriarty v. Greene,* 315 Ill. App. 3d 225, 231 (2000). On appeal, Dempsey asserts that she is entitled to obtain the medical records of the plaintiff during the course of her pregnancy with her decedent. She asserts that El-Amin placed at issue the prenatal care afforded to the decedent by filing a medical malpractice claim against the defendants for injuries suffered by the decedent. In support of this assertion, she raises three arguments. First, she claims that inasmuch as the question presented for review is one of first impression, this court should find, as New York and California

courts have, that the prenatal care records of a mother are inseparable from the prenatal care records of an infant plaintiff. Thus, Dempsey argues, El-Amin waived either her own or her infant's physician-patient privilege with respect to those records by filing a medical malpractice lawsuit on behalf of her deceased infant and, therefore, those records are discoverable. Secondly and alternatively, she argues that the current law of the state compels an identical result. Lastly, she claims that the Illinois Constitution affords only a limited right to privacy, which is inapplicable to what she terms a "reasonable" discovery request for the plaintiff's records in this case.

Since no Illinois court has squarely addressed this question, for guidance in our decision Dempsey points to similar decisions in New York and California that have held that a mother may not prevent medical malpractice defendants from obtaining the prenatal care records for the period during which the mother was pregnant with the infant plaintiff. In both states, in fact, courts have held that prenatal care records are not exclusively those of the mother but also belong equally to the infant. Accordingly, by filing such a medical malpractice action, either the mother or the infant plaintiff through his mother waives the physician-patient privilege with respect to prenatal care records. See, *e.g.*, *Scharlack v. Richmond Memorial Hospital*, 102 A.D.2d 886, 888, 477 N.Y.S.2d 184, 187 (1984) (holding that the mother "can be deemed to have waived the physician-patient privilege only with respect to the medical history and records pertaining to the period when the plaintiff was *in utero*, during which time there could be no severance of the infant's prenatal history from his mother's medical history"). See also *Hughson v. St. Francis Hospital of Port Jervis*, 93 A.D.2d 491, 500, 463 N.Y.S.2d 224, 231 (1983); *Burgos v. Flower & Fifth Avenue Hospital*, 108 Misc. 2d 225, 437 N.Y.S.2d 218 (1980).

Moreover, in *Yetman v. St. Charles Hospital*, 112 A.D.2d 297, 491 N.Y.S.2d 742 (1985), the New York Court of Appeals found that even in an instance where a medical malpractice suit was filed on behalf of an infant by his father, the mother's prenatal care records that were kept during the course of her pregnancy with the infant plaintiff were discoverable. Specifically, *Yetman* held that "case law clearly holds that the mother's medical records pertaining to the period when the plaintiff was *in utero* are discoverable upon the theory of impossibility of severance." *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 744-45.

In a more recent decision, the Supreme Court of Suffolk County, Appellate Division, held that in such instances, a mother does not waive her own physician-patient privilege with respect to the prenatal care records. Rather, she waives her infant's physician-patient privilege by filing the suit on the infant's behalf. *Spratt v. Rochelson*, 165

Misc. 2d 535, 625 N.Y.S.2d 827 (1994). The court held, "[b]y commencing this action on behalf of Nicholas [the infant] and placing his physical condition in controversy thereby, Rosemary Spratt effectively waived Nicholas' physician/patient privilege (see *Tiborsky v. Martorella*, 188 A.D.2d 795, 591 N.Y.S.2d 547 [(1992)]). As such, defendant became entitled to disclosure of records, reports, and other items pertaining to plaintiff's injuries, diagnosis, and treatment (see *Pizzo v. Bunora*, 89 A.D.2d 1013, 454 N.Y.S.2d 455 [(1982)])." *Spratt*, 165 Misc. 2d at 538-39, 625 N.Y.S.2d at 829-30.

Similarly, in *Palay v. Superior Court*, 18 Cal. App. 4th 919, 933, 22 Cal. Rptr. 2d 839, 848 (1993), the California Court of Appeals held that a mother's constitutional right of privacy is not absolute. There, the court determined that a mother's right to privacy in her medical records did not prevent the disclosure of her prenatal care records in a medical malpractice action brought on behalf of her infant. *Palay*, 18 Cal. App. 4th at 934, 22 Cal. Rptr. 2d at 848-49.

Ultimately, Dempsey asks us to find, as New York and California courts have, that El-Amin impliedly waived her physician-patient privilege with respect to her prenatal care records for the period her son was *in utero* by filing a medical malpractice action on his behalf, or that El-Amin has waived her deceased infant's physician-patient privilege with respect to his prenatal care records while he was *in utero* for the same reasons and because his records are inseparable from his mother's records.

Alternatively, Dempsey argues that Illinois has previously addressed the issue. In *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986), we found that "when a patient files suit, he implicitly consents to his physician releasing any of the medical information related to the mental or physical condition which the patient has placed at issue in the lawsuit." *Petrillo*, 148 Ill. App. 3d at 591. Correlatively, Dempsey argues that plaintiff placed the health of the plaintiff's decedent at issue by filing this lawsuit. And because those records are inextricably linked to and address the health and condition of the plaintiff's decedent during the prenatal period, the plaintiff has placed her own medical records at issue for the duration of the pregnancy. As a result, Dempsey asserts that she is entitled to review the records of the prenatal care of the plaintiff, which are unquestionably "related to the mental or physical condition" of the plaintiff's decedent.

Lastly, Dempsey addresses the plaintiff's argument at the trial level that the Illinois Supreme Court, in *Kunkel v. Walton*, 179 Ill. 2d 519 (1997), held that even a person making a claim for bodily injury or disease still has the right to privacy. In *Kunkel*, the court declared section 2—1103(a) of the Illinois Code of Civil Procedure (735 ILCS

5/2—1103(a) (West 1996)) to be unconstitutional for mandating that "[a]ny party who by pleading alleges any claim for bodily injury or disease, including mental health injury or disease, shall be deemed to waive *any privilege* between the injured person and each health care provider who has furnished care *at any time* to the injured person." (Emphasis added.) The court found that " '[a] person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason. *** [T]he individual's privacy interest in his physical person *** must be protected.' [Citation.] We believe that this privacy interest pertaining to individual physical characteristics necessarily encompasses personal medical information." *Kunkel*, 179 Ill. 2d at 537-38.

Dempsey, however, argues that such a reading of *Kunkel* ignores the court's specific language that the right to privacy does not protect disclosure of a person's medical records absolutely. Rather, the right to privacy acts as a bar only to "unreasonable invasions of privacy" where "reasonableness is a function of relevance." (Emphasis omitted.) *Kunkel*, 179 Ill. 2d at 538. In the present case, she argues, there can be no question as to the relevance of the medical records of the prenatal care rendered to the plaintiff's decedent, whose injuries arose in the period immediately following his birth. Ultimately, she claims, as the *Kunkel* court stated, "[i]t is reasonable to require full disclosure of medical information that is relevant to the issues in the lawsuit." *Kunkel*, 179 Ill. 2d at 538.

Plaintiff, on the other hand, asserts that defendant is simply ignoring "the great body of case law" dealing with the physician-patient privilege and the right of privacy that nonparties have as well as the privileges and privacy rights that pregnant women have by virtue of the child they are carrying. In fact, plaintiff claims, the New York and California cases to which Dempsey cites are actually inconsistent with the express language of the physician-patient privilege and with the body of Illinois law.

By way of example, plaintiff notes that this court has, on numerous occasions, refused to allow the disclosure of nonparty medical records. See, *e.g.*, *Glassman v. St. Joseph Hospital*, 259 Ill. App. 3d 730 (1994) (plaintiff not allowed to have partial medical records of other patients—with names and identifying numbers deleted—for any patient who underwent surgery by the same surgeons and who experienced difficulties similar to the plaintiff); *Ekstrom v. Temple*, 197 Ill. App. 3d 120 (1990) (plaintiff not entitled to records of nonparty patients, with identification information deleted, due to physician-patient privilege); *Parkson v. Central Du Page Hospital*, 105 Ill. App. 3d 850 (1982) (plaintiff not entitled to disclosure of nonparty patient

medical records of patients who had suffered an adverse reaction to the drug given to the plaintiff); *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437 (1990) (plaintiff not entitled to medical records of her assailant, who attacked the plaintiff in the hospital lounge, even though this court found that much of the information contained in the nonparty's medical records would be relevant to the issue involved).

More importantly, plaintiff argues that this court recently decided a very similar case against the defendant's position. See *In re D.H.*, 319 Ill. App. 3d 771 (2001). There, the defendant sought all of the medical records of all the minor's parents and siblings. *D.H.*, 319 Ill. App. 3d at 772. Obviously, plaintiff notes, a request for all medical records of the mother would include the prenatal records of the mother as they relate to the minor in question. However, this court refused to allow the defendant in that case to have any of the medical records sought, because all of the records were of nonparties and, thus, were privileged. *D.H.*, 319 Ill. App. 3d at 776. After *D.H.*, plaintiff argues, it cannot be argued that Illinois does not have authority for a request for the mother's prenatal records.

With regard to Dempsey's citation of *Petrillo*, plaintiff notes that the plaintiff there was the patient whose medical information was in question and was the same person for whom recovery was being sought as a result of physical injuries. *Petrillo*, 148 Ill. App. 3d at 585. Thus, plaintiff argues, *Petrillo* does not address the principle at issue in the present case, because the defendant here is not seeking medical records of plaintiff's decedent, who is the only person alleged in the complaint to have suffered physical injuries.

Rather, plaintiff asserts that *D.H.* is the most factually similar to the present facts. Again, there, the defendant sought the medical records of the mother, who was suing as parent and next friend of the injured minor. *D.H.*, 319 Ill. App. 3d at 772-73. The *D.H.* court held that the mother's records were privileged, nonparty medical records. *D.H.*, 319 Ill. App. 3d at 776. Thus, El-Amin notes, even though the mother was suing on behalf of the minor-plaintiff as parent and next friend, the mother's own records were privileged. Accordingly, plaintiff argues that if we are to keep in step with *D.H.*, we should also support the importance of maintaining the confidentiality of medical records of people who are not the party alleged in the complaint to have been injured.

Lastly, in response to defendant's reliance upon *Kunkel*, the plaintiff simply argues that the plain language of the physician-patient privilege prohibits a child or someone on the child's behalf from obtaining the medical records of the mother without the mother's consent. Put another way, plaintiff asserts, if a mother chooses for any reason

to withhold consent or is competent but unavailable, the child would not be able to get the mother's medical records even where such records might be important to the child's health or well-being.

For this, El-Amin claims that Illinois courts have concluded in several instances that, prior to birth, the baby a woman is carrying does not have rights that supercede the mother's rights. In *Stallman v. Youngquist*, 125 Ill. 2d 267 (1988), for example, the supreme court found that a fetus, subsequently born alive, does not have a cause of action against its mother for the unintentional infliction of prenatal injuries. The court noted that while Illinois has recognized the right of the fetus to sue for the negligence of third persons (see, *e.g., Renslow v. Mennonite Hospital*, 67 Ill. 2d 348 (1977)), there is strong public policy in Illinois that states that "the law will not treat a fetus as an entity which is entirely separate from its mother." *Stallman*, 125 Ill. 2d at 277. El-Amin notes that the court expressly refused to subject to state scrutiny "all the decisions a woman must make in attempting to carry a pregnancy to term," which would infringe on the woman's privacy and bodily autonomy. *Stallman*, 125 Ill. 2d at 278. Instead, the *Stallman* court specifically held that it would be a legal fiction "to treat the fetus as a separate legal person with rights hostile to and assertable against its mother." *Stallman*, 125 Ill. 2d at 278. See also *In re Baby Boy Doe*, 260 Ill. App. 3d 392 (1994) (holding that a woman's competent choice to refuse medical treatment as invasive as a caesarian section must be honored even in circumstances where the choice might be harmful to the fetus and that the right to privacy was conceptually linked to the right to bodily integrity).

■ The most recent expression of this court on this subject is *Kunz v. South Suburban Hospital*, 326 Ill. App. 3d 951 (2001). While *Kunz* did not address specifically the certified question set out here, it laid the groundwork for our result today; namely, that filing a medical malpractice lawsuit on behalf of a child waives the physician-patient privilege for records when the child was *in utero*. In *Kunz*, we addressed the issue of "whether a parent who files a medical malpractice action on behalf of one child may, by answering certain questions and raising certain issues in the course of discovery, waive the physician-patient privilege that shields the medical records of her other children." *Kunz*, 326 Ill. App. 3d at 953. We then analyzed the decisions in *Kunkel, Parkson*, and *D.H.* and concluded "that filing a medical malpractice lawsuit on behalf of a child, even when a genetic cause independent of medical malpractice may become an issue, does not thereby waive the physician-patient privilege in favor of the child's siblings." *Kunz*, 326 Ill. App. 3d at 956.

Before arriving at that conclusion, we also examined and cited

with approval similar New York cases that refused to find waiver of the physician-patient privilege when a mother brings suit on behalf of a child for injuries suffered during childbirth. We noted that in *Murphy v. LoPresti*, 232 A.D.2d 461, 648 N.Y.S.2d 169 (1996), the New York Court of Appeals found that "[b]y suing in her representative capacity as the mother of the infant plaintiff, the mother did not waive her physician-patient privilege even though she alleged in the bill of particulars that the defendants failed to record or appreciate her medical history." *Murphy*, 232 A.D.2d at 462, 648 N.Y.S.2d at 169; *Kunz*, 326 Ill. App. 3d at 955. We also noted that *In re New York County DES Litigation*, 168 A.D.2d 44, 47, 570 N.Y.S.2d 804, 805 (1991), held that "[t]he mere fact that a relative, distant or near in terms of kinship, has commenced a medical malpractice action alleging a birth defect should not subject all her relatives to the 'long arm' reach of the law authorizing their medical histories open to all." See *Kunz*, 326 Ill. App. 3d at 956. Lastly, we noted that the court in *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 744-45, held that the medical history of a plaintiff's pregnancies, other than that of the infant plaintiff, "is a matter that falls within the scope of the physician-patient privilege." *Kunz*, 326 Ill. App. 3d at 957.

After that, however, we made a special note that "[t]he *Murphy* court [also] held that the mother *only* waived the privilege for records when the child was *in utero*," and then drew the reader's attention to the same result reached in California in *Palay*, 18 Cal. App. 4th at 934, 22 Cal. Rptr. 2d at 848-49. (Emphasis added.) *Kunz*, 326 Ill. App. 3d at 955. We also noted the language in *New York County DES* that " '[t]he plaintiffs are not required to turn over their mother's medical records *beyond the gestation period.*' " (Emphasis added.) *Kunz*, 326 Ill. App. 3d at 956, quoting *New York County DES*, 168 A.D.2d at 47, 570 N.Y.S.2d at 806. Finally, we also tempered our citation of *Yetman* with *Yetman*'s own caveat that "a mother's medical records for the period when the infant plaintiff was *in utero* are discoverable." *Kunz*, 326 Ill. App. 3d at 957, citing *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 744-45.

■ As we recognized in *Kunz*, "in *D.H.*, this court found that 'New York law is in accordance with Illinois law on the issue of whether the medical records of nonparties are protected by the physician-patient privilege with regard to both the facts and communications contained therein.' *D.H.*, 319 Ill. App. 3d at 779." *Kunz*, 326 Ill. App. 3d at 956. Accordingly, given *Kunz*'s and *D.H.*'s approval of New York law in these situations—especially in light of *Kunz*'s citation to New York's waiver exception to the physician-patient privilege—we feel compelled to answer the certified question for the defendant in the affirmative.

Of course, *Kunz* is only persuasive and not controlling law. The issue there was whether the plaintiff's sibling's records were discoverable, and both New York and Illinois law established that no waiver of the physician-patient privilege could be found. That issue and those facts, however, are very different from the issue and facts currently before us. Here, as a practical matter, it would be impossible for anyone to obtain El-Amin's son's *own* medical records—separate from his mother's—for the time that he was *in utero*. In other words, the prenatal care records bearing the name of El-Amin during the period that her son was *in utero* are, for all purposes, the medical records of her son. Consequently, we find that the defendant is correct that she is entitled to obtain El-Amin's son's prenatal medical records via El-Amin's own prenatal medical records pursuant to statute and *Petrillo*. Particularly instructive on this is *Yetman*, where the mother's prenatal records were found to be discoverable, even though the *husband* filed the lawsuit. *Yetman*, 112 A.D.2d at 298, 491 N.Y.S.2d at 744-45. Here, once El-Amin's child's medical condition was placed at issue in the lawsuit, the physician-patient privilege was waived as to his prenatal medical records or, in other words, to the only relevant existing medical records—hers. And, as *Kunkel* noted, where the right to privacy is a bar only to "unreasonable invasions of privacy," and "reasonableness is a function of relevance," the right to privacy cannot operate as a bar in this situation.

Moreover, plaintiff's citation of *Stallman* for the proposition that the rights of a mother are superior to those of her subsequently born alive fetus is not supportive of her claim. *Stallman*, we note, held that a fetus has no cause of action against its mother for the unintentional infliction of prenatal injuries. *Stallman*, 125 Ill. 2d at 278. By contrast, as defendant notes, the matter before us is unrelated to that cause of action. Here, the plaintiff's decedent's cause of action is not hostile to its mother. Rather, the cause of action at issue is one for injuries of the infant brought on behalf of the infant *by his mother*, who is not only the administrator of her child's estate, but also one of its primary beneficiaries as well.

For the reasons stated above, we answer the trial court's certified question in the affirmative.

Certified question answered.

QUINN and REID, JJ., concur.