IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2021 Session

**SAVANNAH LEIGH JACKSON, ET AL. v.
THE STATE OF TENNESSEE, ET AL.**

**Appeal from the Tennessee Claims Commission
No. T20192145     William A. Young, Commissioner**

———————————————————

**No. E2020-01232-COA-R9-CV**

———————————————————

Parents filed a healthcare liability and wrongful death complaint after the mother delivered a stillborn infant. We granted this interlocutory appeal to review whether the claims commission erred in denying summary judgment to the defendants. Finding no error in the Commission's ruling, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Tennessee Claims
Commission Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Joshua R. Walker, Knoxville, Tennessee, for the appellants, State of Tennessee and The University of Tennessee College of Medicine-Chattanooga.

J. Allen Hammontree, Dalton, Georgia, for the appellees, Savannah Leigh Jackson and Mark Anthony Jackson.

**OPINION**

**I. BACKGROUND**

Branson Vance Jackson ("Decedent") was delivered stillborn on December 6, 2017, at Erlanger Medical Center. On November 29, 2018, Mark and Savannah Jackson ("Parents"), provided pre-suit notice of an impending healthcare liability claim, as Parents alleged that Decedent's death "was the direct and proximate result of the negligence and medical malpractice of resident physicians and physicians employed by the University of

Tennessee College of Medicine at Chattanooga." No allegation or claim was presented for damages for harm or injury to Savannah Jackson ("Mother") or any other person. The State of Tennessee/the University of Tennessee College of Medicine ("State"), the Chattanooga Hamilton County Hospital Authority ("Erlanger Health System" or "Erlanger"), and Regional Obstetrical Consultants, P.C. ("Regional Obstetrical"), among others, received the pre-suit notice. As part of the pre-suit notice, Parents provided a medical authorization that states in pertinent part as follows:

> I, the individual identified below, hereby authorize the use or disclosure of my individually identifiable health information as described below. I understand if the organization or entity authorized to receive the information is not a health plan or health care provider, the released information may no longer be protected by federal privacy regulations.

> PATIENT NAME: <u>BRANSON VANCE JACKSON</u>   DOB: <u>12/6/2017</u>
> Deceased infant delivered stillborn on 12/6/2017

This medical authorization was signed by Mother, as "Mother of deceased infant, Branson Vance Jackson." The authorization correctly identified State as the party authorized to receive the health information. The notices, list of providers, and medical authorizations were sent within the statute of limitations and mailed in conformity with Tennessee Code Annotated section 29-26-121. The complaint was filed more than 60 days after the notices were sent and within 120 days of the expiration of the statute of limitations.

On May 1, 2019, State submitted a records request to Erlanger Health System that sought the medical records of Decedent and relied on the medical authorization provided as part of Parents' pre-suit notice. In response to this request, Erlanger provided the affidavit of Jim Brown, custodian of medical records, certifying "that a thorough search of [Erlanger's] files, carried out under [Mr. Brown's] direction and control, revealed no records for BRANSON JACKSON [b]ecause … [Erlanger has] no record of a person by this name and DOB, or SSN." On May 29, 2019, State, relying on the medical authorization provided as part of Parents' pre-suit notice, submitted a records request to Regional Obstetrical that sought Decedent's medical records. In response, Regional Obstetrical provided the affidavit of Jennifer Sherrell, records custodian, certifying that Regional Obstetrical has "no record of having seen a patient by this name and date of birth." Accordingly, State was unable to acquire any records from two other medical providers that also received Parents' pre-suit notice.

After this claim transferred from the Division of Claims and Risk Management to the Claims Commission for litigation, State filed a motion for summary judgment seeking dismissal of the claim for Parents' failure to comply with both Tennessee Code Annotated section 29-26-121(a)(2)(E) and the statute of limitations. Commissioner Young denied the motion for summary judgment by order entered February 10, 2020, ruling as follows:

[T]he undersigned cannot conclude that [Parents'] authorization is defective or that it fails to comply, or at least substantially comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). Indeed, in attempting to identify "the extent and significance of [Parents'] errors and omissions" in the authorization considered herein, the Commission does not conclude that there were errors or omissions that defeat substantial compliance. It does appear to the Commission that the authorization contains the necessary relevant information and even Defendant's counsel referred to the document as being a properly executed HIPA[A] authorization "in compliance with Tenn. Code Ann. § 29-26-121."

According to the Commissioner, "[t]he fact that the records custodian did not turn up records showing 'Branson Jackson' does not necessarily conclude that the release was substantially defective, especially where there is no indication in the hospital's 'response' that the search encompassed the mother Savannah Jackson."

State argued that the Commission erred in making this ruling because the medical authorization provided by Parents allowed only the release of Decedent's records—not those of Mother, in whose name the relevant records may be found. According to State, it was deprived of the opportunity to evaluate the medical records and merits of Parents' claims. Following entry of the February 10, 2020 order, State filed, on March 10, 2020, a motion to revise the Commission's February 10, 2020 order or, in the alternative, motion for interlocutory appeal. State argued that Commissioner Young abused his discretion when he ruled that the medical providers "could have searched or produced [Mother]'s medical records when presented with a medical authorization expressly limited to the release of [Decedent's] medical records." The Commission denied the motion to revise and granted the motion for interlocutory appeal by order entered August 31, 2020. We granted the application for interlocutory appeal by order entered October 6, 2020.

## II. ISSUES

Pursuant to Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure and this court's October 6, 2020 order, the following issue is before us for review:

Whether the Claims Commission erred in denying State's motion for summary judgment, which alleged that the medical records release provided by Parents failed to satisfy the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E), rendering State unable to obtain medical records.

# III. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary judgment presents a question of law. Therefore, our review is de novo with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This court must make a fresh determination that all requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.,* 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

# IV. DISCUSSION

Pertinent portions of the complaint provide as follows:

[Mother] was at approximately 29 weeks gestation and presented to the emergency department of Erlanger Medical Center on December 3, 2017.

[Mother] had a known history of diabetes and of a prior hospitalization for diabetic ketoacidosis. She also had undergone a prior emergency cesarean section for the delivery of her first child.

[Mother] was seen by resident physicians in the emergency department . . . .

[Mother] had elevated heart rate, respiration and glucose. She was found to be distressed. The decision was made to admit her to the Intensive Care Unit rather than Labor and Delivery.

\* \* \*

[Mother]'s condition stabilized. However, the condition of her child, BRANSON VANCE JACKSON, eroded.

Due to the condition of [Mother]'s diabetic ketoacidosis, as well as the lack of proper intervention, decedent died and was delivered stillborn by cesarean section on December 6, 2017.

- 4 -

State submits that the Commission's denial of the summary judgment motion should be reversed because the medical authorization expressly applies only to Decedent's records and not to Mother's records. State claims that Mother is the relevant patient, as the complaint alleges multiple facts regarding her history of diabetes, prior hospitalization for diabetic ketoacidosis, prior emergency caesarian section, her elevated heart rate, respiration, and glucose, along with her admission to the intensive care unit instead of labor and delivery. Those records are filed under her name. Decedent has no records under his name because he was not born alive. According to State, Parents did not substantially comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E) because State could not acquire any records from Regional Obstetrical or Erlanger of alleged negligence. Further, because they did not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E), State asserts that Parents were not entitled to the 120-day extension of the statute of limitation allowed by Tennessee Code Annotated section 29-26-121(c), making this claim untimely.

State contends that federal regulations under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") do not allow the medical authorization solely for the release of Decedent's medical records to authorize the release of Mother's medical records. *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996). State notes that all of the alleged negligence occurred before Decedent's birth, while Mother was the only possible patient. Thus, according to State, because Mother expressly indicated that she was signing in a representative capacity for Decedent, the authorization cannot allow disclosure of Mother's records. State contends that neither Regional Obstetrical nor Erlanger could alter the authorization provided, so under federal law, no records for Mother could be produced.

State observes that "substantial compliance, as it is used in the context of pre-suit notice, does not refer solely to the number of satisfied [HIPAA] elements, but rather to a degree of compliance that provides the defendant with the ability to access and use the medical records for the purpose of mounting a defense." *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 711 (Tenn. Ct. App. 2017). State asserts that "in order to substantially comply with [Tennessee Code Annotated section 20-26-121(a)(2)(E)], a plaintiff must provide a defendant with a . . . medical authorization form that is sufficient to allow the defendant to obtain . . . medical records from the other providers being sent the notice." *Buckman v. Mountain States Alliance*, 570 S.W.3d at 229, 238 (Tenn. Ct. App. 2018).

State notes that "[b]ecause the penalties imposed upon entities that wrongfully disclose or obtain private health information in violation of HIPAA are severe, the sufficiency of the plaintiffs' medical authorizations is imperative." *Id.* at 239. Admittedly, the penalties for wrongfully disclosing or obtaining private health information in violation of HIPAA are "extremely severe, with such entities facing punishment of up to $50,000 per offense and/or imprisonment of up to one year for non-compliance." *Id.*

Tennessee Code Annotated section 29-26-121(a)(2) defines the information that a plaintiff must include in the pre-suit notice:

> The notice shall include:
>
> (A) The full name and date of birth of the patient whose treatment is at issue;
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient;
> (C) The name and address of the attorney sending the notice; if applicable;
> (D) A list of the name[s] and address[es] of all providers being sent a notice; and
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2). Disclosure of individually identifiable health information that requires an authorization is governed by 45 C.F.R. § 164.508. This particular regulation has two subsections. First,

> [e]xcept as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization.

45 C.F.R. § 164.508(a)(1). Another subsection sets forth the core elements of a valid authorization:

> (c) Implementation specifications: Core elements and requirements—
>
> (1) Core elements. A valid authorization under this section must contain at least the following elements:
>
> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
>
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
>
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1).

State asserts that applying these requirements to the medical authorization at issue demonstrates the error of the Commission's finding that both Decedent's and Mother's medical records could have been disclosed. First, the description of the information to be disclosed that identifies the information in a specific and meaningful fashion, 45 C.F.R. § 164.508(c)(1)(i), is the individually identifiable health information of only Decedent. Second, the signature of the personal representative and description of the representative's authority to act for the individual, 45 C.F.R. § 164.508(c)(1)(vi), clearly indicates that Mother signed the authorization, not in her individual capacity, but instead as Decedent's mother. State contends that the medical authorization extends to only medical records in Decedent's name and release of Mother's records is not authorized.

State argues that the Tennessee Supreme Court's recent decision in *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322 (Tenn. 2020) further supports its position that the medical authorization provided by Parents did not allow it to acquire any records, thereby preventing it from receiving the benefit Section 121(a)(2)(E) was intended to confer. State asserts that this failure results in prejudice to it and a failure by Parents to substantially to comply with the requirements of Section 29-26-121(a)(2)(E).

Parents argue that State errs in claiming that Parents' medical records release does not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). They noted that Section 29-26-121(a)(2)(A) requires that the full name and date of birth of the patient whose treatment is at issue be provided. The statute then differentiates "claimant" from "patient" in providing that the claimant may sign if the patient lacks capacity. Parents assert that under Tennessee law governing wrongful death claims, a

viable fetus is deemed to be a person. Tenn. Code Ann. § 20-5-106(d).[1] According to Parents, therefore, Decedent was a separate and distinct person and patient from Mother. The only patient and person for whom damages are sought is Decedent. Thus, Parents argue that the notices and authorizations correctly list Decedent as the patient in both the notice and the medical authorization.

*Stevens v. Hickman Community Health Care Servs., Inc.*, 418 S.W. 3d 547 (Tenn. 2013), holds that "[i]n determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id.* at 556. *Stevens* notes as follows:

> [T]he requirements of Tenn. Code Ann. § 29-26-121(a)(2)(D) and Tenn. Code Ann. § 29-26-121(a)(2)(E) serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records. Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records.

*Id.* at 554-55. The *Stevens* court further instructs us that "[n]ot every non-compliant HIPAA medical authorization will result in prejudice." *Id.* at 556.

As noted by Parents, in the matter at hand, there are no allegations that the authorization permits release to an incorrect party, that the information is in error, that the wording of the authorization does not comport with HIPAA, or that there is no capacity on the part of the signer. Parents observe that a letter from State's counsel to Erlanger provides: "Enclosed you will find a copy of a properly executed HIPAA 'Authorization to Release Protected Health Care Information' in Compliance with T.C.A. §29-26-121." Parents contend that the problem in this case is that the records custodians for Erlanger Medical Center and Regional Obstetrical did not archive records based upon Decedent's name.

We agree with the Commission's ruling on State's dispositive motion. It is

---

[1]"A fetus shall be considered viable if it had achieved a stage of development wherein it could reasonably be expected to be capable of living outside the uterus." Tenn. Code Ann. § 20-5-106(d).

unreasonable to place upon Parents the burden of predicting how a medical provider will identify and archive its records and to anticipate how a records custodian will respond to an otherwise properly executed medical authorization. Because it is impossible to sever an infant's prenatal history from a mother's history, the prenatal care records bearing Mother's name during the period Decedent was *in utero* were, for all purposes, the medical records of Decedent. *See e.g. El-Amin v. Dempsey*, 329 Ill. App. 3d 800, 768 N.E.2d 344 (1st Dist. 2002); *See* R. Brown, *Balancing Privacy and Proof: Discovery of NonParty Medical Records*, 21 J. Health Care Law & Policy 189 (2018). Accordingly, we find that the Claims Commission did not err denying the State's motion for summary judgment because the medical records release provided by Parents substantially complied with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). Parents were entitled to the 120-day extension and the complaint was timely filed.

## V. CONCLUSION

We affirm the order of the Claims Commission and remand this cause. Costs of this appeal are taxed against the State, for which execution may issue if necessary.

_____
JOHN W. MCCLARTY, JUDGE